**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,  ) | |
| ) | |
| Plaintiff,  ) | |
| ) | |
| v.  ) | No. 4:18-CR-565-CDP |
| ) | |
| DEMETRIUS JOHNSON,  ) | |
| ) | |
| Defendants.  ) | |

**DEFENDANT DEMETRIUS JOHNSON'S MOTION TO SUPPRESS STATEMENTS**

Defendant Demetrius Johnson ("Johnson"), by and through undersigned counsel, respectfully moves to suppress the statements Johnson allegedly made on July 18, 2018 during a custodial interrogation in violation of his Fifth Amendment right to remain silent.

**I.  Background**

On June 28, 2018, Johnson was initially charged in an indictment with three counts. (Doc. 1). On August 9, 2018, the Government sought, and the grand jury returned, a superseding indictment charging 16 defendants with 18 counts. (Doc. 179). Johnson was charged in four of those counts: Counts 1, 2, 3, and 16. (*Id.*). On July 10, 2019, upon the Government's motion, Count 16 was dismissed. (Doc. 472). Johnson has pled not guilty to all counts.

Count 1 alleges that Johnson knowingly and intentionally conspired to distribute and possess, with the intent to distribute, a mixture or substance containing a detectable amount of fentanyl, a Schedule II controlled substance, in violation of 21 U.S.C. § 841(a)(1) and 846. (*Id.*).

Count 2 alleges that Johnson knowingly and intentionally distributed a mixture or substance containing a detectable amount of fentanyl, a Schedule II controlled substance, in

violation of 21 U.S.C. § 841(a) and that the death of J.W. resulted from the use of such fentanyl distributed by Johnson making the offense punishable under 21 U.S.C. § 841(b)(1)(C). (*Id.*).

Count 3 alleges that on or about December 3, 2016, Johnson, along with two codefendants:

> acting together and with others, known and unknown, did knowingly possess one or more firearms in furtherance of the commission of a drug trafficking crime for which they may be prosecuted in a court of the United States, to wit: conspiracy to distribute and to possess with the intent to distribute narcotics, including but not limited to fentanyl, as charged in Count 1 herein, and in the course of such violation, caused the death of David Bryant, through the use of one or more firearms. In violation of Title 18, United States Code, Sections 2, 924(c)(1)(A), and 924(j). And in the course of this violation caused the death of a person through the use of a firearm, which killing is murder as defined in Title 18, United States Code, Section 1111, in that the defendants acting together and with others, with malice aforethought, unlawfully killed David Bryant, by shooting him with one or more firearms, willfully, deliberately, maliciously, and with premeditation, thereby making this offense punishable under Title 18, United States Code, Sections 2 and 924(j).

(*Id.*).

Discovery provided by the Government reveals that on July 18, 2018, law enforcement officers conducted a videotaped custodial interrogation of Johnson. Review of the recorded interview reveals that officers read Johnson his *Miranda* rights at the outset of the interview and that Johnson immediately, and unequivocally, invoked his right to remain silent. Rather than ending the interrogation at that time as the Constitution requires, the officers interrogated Johnson for approximately 15 more minutes. Making matters worse—and despite Johnson having already invoked his constitutional right to remain silent—at approximately 11 minutes and 32 seconds into the recorded interrogation, the officers once again asked Johnson, "is there anything you want to discuss with us?" Once again, Johnson clearly informed the officers that he was unwilling to make any statements.

## II.  Johnson's Statements Should be Suppressed

Johnson unquestionably, and repeatedly, invoked his right to remain silent. Nonetheless, law enforcement did not terminate the interrogation. Accordingly, all of Johnson's statements made during the interrogation must be suppressed.

It is black letter law that testimonial statements made by a person being questioned by law enforcement officers after being "taken into custody or otherwise deprived of his freedom of action in any significant way" must first "be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him and that he has a right to the presence of an attorney, either retained or appointed." *Stansbury v. California*, 511 U.S. 318, 322 (1994) (quoting *Miranda v. Arizona*, 384 U.S. 436, 444 (1966)). Statements elicited in violation of this rule must be suppressed. *Id.* In such custodial interrogations, law enforcement officers are required to tender the so-called *Miranda* warnings and to stop any attempts at obtaining statements by an individual as soon as he invokes his right under the Fifth Amendment to remain silent. *Id*.

There is absolutely no dispute that Johnson was in custody at the time of the interrogation—he had been arrested and had been brought into an interview room with two law enforcement officers. Indeed, there can be no debate as to whether *Miranda* was implicated because the officers tendered to Johnson the *Miranda* rights and required him to sign a form acknowledging that these rights had been provided to him.

Further, it is clear that Johnson clearly and unequivocally invoked his Fifth Amendment right to remain silent at the outset of the interrogation, but that law enforcement did not end the interview. Indeed, within the first minute of the interrogation, Johnson made clear his intent to remain silent, but the interview continued for approximately 15 more minutes. It was not until

3

Johnson's second invocation of his right to remain silent that the officers finally did what the Constitution requires, finally terminating the interrogation.

The law governing situations like this one is straightforward: "[o]nce warnings have been given, the subsequent procedure is clear. If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease." *Miranda v. Arizona*, 384 U.S. 436, 473-74 (1966). "At this point he has shown that he intends to exercise his Fifth Amendment privilege; any statement taken after the person invokes his privilege cannot be other than the product of compulsion, subtle or otherwise. Without the right to cut off questioning, the setting of in-custody interrogation operates on the individual to overcome free choice in producing a statement after the privilege has been once invoked." *Id.* at 474. A suspect's right to end questioning must be "scrupulously honored." *Michigan v. Mosley*, 423 U.S. 96, 103 (1975).

Here, rather than "scrupulously honor[ing]" Johnson's right to end questioning and stopping the interrogation, law enforcement continued making statements to Johnson in an attempt to compel him to waive his already clear invocation of his right to remain silent. The officers made various allegations and played audio recordings of purported wire taps to Johnson in an attempt to persuade him that he should reconsider, and instead make incriminating statements. In response to the officers' presentation, Johnson indeed made certain statements. And in an attempt to convince him to reconsider his decision to refuse questioning, one of the officers asked Johnson "is there anything you want to discuss with us?" Finally, following Johnson's second assertion of his right to remain silent, the officers ended the interrogation.

While the violation of Johnson's constitutional right is clear cut, it is also worth mentioning that the Government bears the burden of proving, by a preponderance of the evidence, that a

4

defendant knowingly and intelligently waived his *Miranda* rights. *See Colorado v. Connelly*, 479 U.S. 157 (1986). To satisfy this burden, the Government must introduce sufficient evidence to establish that under the "totality of the circumstances," the defendant was aware of "the nature of the right being abandoned and the consequences of the decision to abandon it." *Moran v. Burbine*, 475 U.S. 412, 421 (1986). The determination of whether a waiver was valid "depends upon the totality of the circumstances including the background, experience, and conduct of the defendant." *United States v. Garibay*, 143 F.3d 534, 536 (9th Cir. 1998). The Government's burden to make such a showing "is great," and the court will "indulge every reasonable presumption against waiver of fundamental constitutional rights." *United States v. Heldt*, 745 F.2d 1275, 1277 (9th Cir. 1984) (citing *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)).

Here, the Government cannot carry its great burden of establishing that Johnson knowingly, voluntarily, intelligently waived his rights. At the outset, the Government did not cease its questioning of Johnson when he invoked his right to remain silent. Any subsequent purported waiver by Johnson was not done knowingly, intelligently, or voluntarily. Rather, any supposed waiver was done after numerous attempts by law enforcement to convince Johnson that he should reconsider his decision to remain silent. As such, the Government cannot possibly establish that Johnson was aware of "the nature of the right being abandoned and the consequences of the decision to abandon it." *Moran*, 475 U.S. at 421. Accordingly, this Court should suppress all statements made by Johnson during this unconstitutional interrogation and any evidence subsequently obtained which derives from statements made by Johnson during the unconstitutional interrogation pursuant to the fruit of the poisonous tree doctrine. *See, e.g., Murray v. United States*, 487 U.S. 533, 536- 37 (1988) (stating that the fruit of the poisonous tree doctrine "bars evidence

5

which, though not obtained in [an] illegal search, was derived from information or items in the search").

### III.     Conclusion

Based on the foregoing, this Court should suppress all statements made by Johnson during the custodial interrogation on July 18, 2018 and should also suppress any applicable subsequently obtained evidence or statements pursuant to the fruit of the poisonous tree doctrine. Johnson respectfully requests an evidentiary hearing.

Respectfully submitted,

**Margulis Gelfand, LLC**

*/s/ William S. Margulis*
WILLIAM S. MARGULIS, #37625
JUSTIN K. GELFAND, #62265
8000 Maryland Ave., Ste. 420
St. Louis, MO 63105
Telephone: 314.390.0234
Facsimile: 314.485.2264
bill@margulisgelfand.com
justin@margulisgelfand.com
ATTORNEYS FOR DEFENDANT JOHNSON

## Certificate of Service

I hereby certify that I filed the foregoing through the Court's CM/ECF system which will provide notice of filing to all counsel of record.

>*/s/ William S. Margulis*
>WILLIAM S. MARGULIS, #37625
>JUSTIN K. GELFAND, #62265
>8000 Maryland Ave., Ste. 420
>St. Louis, MO 63105
>Telephone: 314.390.0234
>Facsimile: 314.485.2264
>bill@margulisgelfand.com
>justin@margulisgelfand.com
>ATTORNEYS FOR DEFENDANT JOHNSON