UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:18-CR-565-CDP |
| | ) | |
| DEMETRIUS JOHNSON, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT DEMETRIUS JOHNSON'S MOTION TO SUPPRESS EVIDENCE OBTAINED THROUGH USE OF CELL SITE SIMULATOR**

Defendant Demetrius Johnson ("Johnson"), by and through undersigned counsel, respectfully moves to suppress all evidence illegally seized by law enforcement through its use of a cell site simulator ("CSS") also moves to suppress all evidence that was derived from information obtained through use of the CSS pursuant to the fruit of the poisonous tree doctrine.

**I.    Background**

On June 28, 2018, Johnson was initially charged in an indictment with three counts. (Doc. 1). On August 9, 2018, the Government sought, and the grand jury returned, a superseding indictment charging 16 defendants with 18 counts. (Doc. 179). Johnson was charged in four of those counts: Counts 1, 2, 3, and 16. (*Id.*). On July 10, 2019, upon the Government's motion, Count 16 was dismissed. (Doc. 472).  Johnson has pled not guilty to all counts.

Count 1 alleges that Johnson knowingly and intentionally conspired to distribute and possess, with the intent to distribute, a mixture or substance containing a detectable amount of fentanyl, a Schedule II controlled substance, in violation of 21 U.S.C. § 841(a)(1) and 846. (*Id.*).

Count 2 alleges that Johnson knowingly and intentionally distributed a mixture or substance containing a detectable amount of fentanyl, a Schedule II controlled substance, in

violation of 21 U.S.C. § 841(a) and that the death of J.W. resulted from the use of such fentanyl distributed by Johnson making the offense punishable under 21 U.S.C. § 841(b)(1)(C). (*Id.*).

Count 3 alleges that on or about December 3, 2016, Johnson, along with two codefendants:

> acting together and with others, known and unknown, did knowingly possess one or more firearms in furtherance of the commission of a drug trafficking crime for which they may be prosecuted in a court of the United States, to wit: conspiracy to distribute and to possess with the intent to distribute narcotics, including but not limited to fentanyl, as charged in Count 1 herein, and in the course of such violation, caused the death of David Bryant, through the use of one or more firearms. In violation of Title 18, United States Code, Sections 2, 924(c)(1)(A), and 924(j). And in the course of this violation caused the death of a person through the use of a firearm, which killing is murder as defined in Title 18, United States Code, Section 1111, in that the defendants acting together and with others, with malice aforethought, unlawfully killed David Bryant, by shooting him with one or more firearms, willfully, deliberately, maliciously, and with premeditation, thereby making this offense punishable under Title 18, United States Code, Sections 2 and 924(j).

(*Id.*).

Discovery provided by the Government reveals that on February 7, 2018, Special Federal Officer ("SFO") Michael Betz applied for and obtained a search warrant purporting to authorize the use of a CSS "to identify the cellular device(s) used by" Johnson. *See* Ex. 1. The search warrant was then granted by Magistrate Judge Mensah. *Id.* Thereafter, on February 21, 2018, the Government filed a "Report and Return Regarding Initial Cell Site Simulator Warrant" with the Court. *See* Ex. 2.

> The search warrant that was ultimately granted provided, in relevant part, as follows:
>
> An application by a federal law enforcement officer or an attorney for the government requests the search of the following *person or property* located in the Eastern District of Missouri (identify the person or describe the property to be searched and give its location):
>
> the Use of a Cell-Site Simulator to Identify the Cellular Device(s) Used by DEMETRIUS JOHNSON.

> I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal (identify the person or describe the property to be seized):
>
> see "Attachment A."

*See* Ex. 1 (emphasis added). Attachment A provides, in relevant part, as follows:

> the Warrant authorizes the Federal Bureau of Investigation and other authorized federal/state/local law enforcement agencies (hereinafter referred to as "investigative agency(ies)") to use an electronic surveillance technique, that being a cell-site simulator (hereinafter "cell-site simulator") for a period of forty-five (45) days following the issuance of the Warrant i.e., from February 7, 2018, to March 23, 2018, 11:59 p.m. (CT), at all times of day and night, to determine the electronic identifying numbers of any cellular device(s) (hereinafter referred to as the "target cellular device(s)") used by the target subject by collecting radio signals, including the unique identifiers, emitted by the target cellular device(s) and other cellular devices in its vicinity, when the investigative agency(ies) have reason to believe that the target subject is present.

*See id.*

Stated succinctly, in the portion of the warrant that is supposed to specify the "place to be searched," the warrant attempts to authorize the use of a CSS; in the portion of the warrant that is supposed to specify the "things to be seized," the warrant purports to give authority to determine the electronic identifying numbers of any cellular device used by Johnson. *See id.*

The search warrant also expressly provides, "[t]he officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to Honorable Shirley P. Mensah, U.S. Magistrate Judge." *Id.* The Government attempted to satisfy this requirement of the warrant by filing with the Court its "Report and Return Regarding Initial Cell Site Simulator Warrant" which, rather than listing things seized pursuant to execution of the search warrant, simply provides the date and times that the CSS was apparently used. *See* Ex. 2

In the application for the warrant, the Government moved the Court, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 3123, for issuance of a search warrant. *See* Ex. 1. The application and the warrant make clear that the Government did not know the phone numbers associated with any cellular phones being utilized by Johnson—indeed, ascertaining the phone numbers associated with phones being used by Johnson was the entire aim of the warrant.

In the affidavit offered in support of the warrant application, SFO Betz alleged that Johnson regularly used cellular telephones in furtherance of drug trafficking crimes and expressly stated, "I believe that identification of any and all cellular devices used by [Johnson] through the use of a cell-site simulator will constitute and lead to evidence concerning the commission of the subject offense(s)." *See* Ex. 1. SFO Betz then specifically explained, "[t]he investigative agency(ies) plan to use the information requested in the attached Application to identify the cellular device(s) used by [Johnson] along with the telephone number, ESN or IMSI numbers assigned to or utilized by the cellular device(s)." *Id.*

Suppression of the evidence obtained during the Government's utilization of the CSS is necessary as the evidence was obtained in violation of Johnson's rights under the Fourth Amendment to the United States Constitution in that: (1) the warrant was facially invalid in that it did not specify any particular place to be searched or things to be seized; (2) the Government did not return—as required by Rule 41(f)(1)(D) and the warrant itself—an inventory of the things seized pursuant to the warrant and this significantly prejudiced Johnson; and (3) identification of phone numbers of phones utilized by a defendant is not contemplated under 18 U.S.C. § 3123.

In addition to suppression of the information obtained pursuant to the facially invalid warrant, all other information or items obtained thereafter must be suppressed pursuant to the fruit of the poisonous tree doctrine. *See, e.g., Murray v. United States*, 487 U.S. 533, 536-37 (1988)

4

(stating that the fruit of the poisonous tree doctrine "bars evidence which, though not obtained in [an] illegal search, was derived from information or items in the search").

**II.     Discussion**

    A.    <u>Legal Standard</u>

The Fourth Amendment to the United States Constitution provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const., amend. IV. "[A] warrant that fails to conform to the particularity requirement of the Fourth Amendment is unconstitutional[.]" *Groh v. Ramirez*, 540 U.S. 551, 557 (2004) (quoting *Massachusetts v. Sheppard*, 468 U.S. 981, 988, n.5 (1984)). The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const., Amend IV. "The text of the Amendment itself expressly imposes two requirements: First, all searches and seizures must be reasonable. Second, a warrant may not be issued unless probable cause is properly established and the scope of the authorized search is set out with particularity." *United States v. Ramirez*, 676 F.3d 755, 759 (8th Cir. 2012) (internal citations omitted). The lawfulness of law enforcement's use of a CSS must be analyzed pursuant to Fourth Amendment search and seizure jurisprudence. *See, e.g., In re the Application of the U.S. for an Order Authorizing the Installation & Use of a Pen Register & Trap & Trace Device*, 890 F. Supp. 2d 747, 752 (S.D. Tex. 2012) (citing *United States v. Rigmaiden*, 844 F. Supp. 2d 982 (D. Ariz. 2012)) ("the government acknowledged that the proper analysis had to be pursuant to Fourth Amendment search and seizure jurisprudence").

B.     The Search Warrant Was Facially Invalid

A search warrant must state, with particularity, "the place to be searched, and the persons or things to be seized." U.S. Const., Amend. IV. In this case, the warrant fails to identify any place to be searched or persons or things to be seized. Instead, the warrant simply requests permission to use a CSS.

Even a cursory review of the warrant reveals these obvious shortcomings. In the portion of the warrant that is supposed to specify the "place to be searched," the warrant states: "the Use of a Cell-Site Simulator to Identify the Cellular Device(s) Used by DEMETRIUS JOHNSON." *See* Ex. 1. To state the obvious, this is not a "place to be searched."

Furthermore, in the portion of the warrant that is to specify the "persons or things to be seized," the warrant provides that law enforcement is entitled to utilize the CSS to "determine the electronic identifying numbers of any cellular device(s)...used by" Johnson. *See id.* In contravention of the Fourth Amendment, determination of identifying numbers does not constitute "persons or things to be seized."

Because the warrant failed to describe with particularity any place to be searched or things to be seized, the warrant was "plainly invalid." *See Groh*, 540 U.S. at 557. In *Groh*, the United States Supreme Court confronted an instance in which an application for a search warrant adequately described things to be seized but the warrant itself did not. *Id*. The Court explained, "[t]he fact that the *application* adequately described the 'things to be seized' does not save the *warrant* from its facial invalidity." *Id*. (emphasis in original). "The Fourth Amendment requires that the *warrant* particularly describe the things to be seized, not the papers presented to the judicial officer...asked to issue the warrant. And for good reason: The presence of a search warrant serves a high function and that high function is not necessarily vindicated when some other document,

6

somewhere, says something about the objects of the search, but the contents of that document are neither known to the person whose home is being searched nor available for her inspection." *Id*. (internal citations omitted and italics in original opinion). In this case, neither the warrant nor the application described with particularity the place to be searched or the things law enforcement was authorized to seize. Thus, if the law requires suppression even where an application is sufficient, but a warrant is not, the law unambiguously and necessarily requires suppression where there is no description in *any* document setting parameters as to what law enforcement may seize and where they may seize it from. To allow evidence obtained pursuant to such a warrant would constitute endorsement of the use of "general warrants" which are unambiguously prohibited by the Fourth Amendment. *See, e.g., Anderson v. Maryland*, 427 U.S. 463, 480 (1976) (citations omitted):

> General warrants, of course, are prohibited by the Fourth Amendment. "[T]he problem [posed by the general warrant] is not that of intrusion per se, but of a general, exploratory rummaging in a person's belongings.... [The Fourth Amendment addresses the problem] by requiring a 'particular description' of the things to be seized." This requirement "'makes general searches... impossible and prevents the seizure of one thing under a warrant describing another. As to what is to be taken, nothing is left to the discretion of the officer executing the warrant.'"

Because the search warrant at issue in this case fails entirely to identify a particular place to be searched or things to be seized, "the warrant was so obviously deficient that we must regard the search as 'warrantless' within the meaning of our case law." *Groh*, 540 U.S. at 558.

Because the Fourth Amendment requires that a search warrant specify a place to be searched, and because the warrant at issue instead sought permission to utilize a CSS anywhere law enforcement felt appropriate, the Government's use of the CSS was warrantless and all evidence and/or information obtained pursuant to the warrant must be suppressed, along with all

7

subsequently obtained evidence utilizing information gather under the warrantless use of the CSS pursuant to the fruit of the poisonous tree doctrine.

    C.  The Government Failed to Return an Inventory of Things Seized Pursuant to the Warrant and this Prejudiced Johnson

The search warrant in this case—in addition to being plainly invalid—was also not complied with by the Government and Johnson was thereby prejudiced. Specifically, the warrant—and Rule 41(f)(1)(D)—required the Government to prepare an inventory of items and/or information gathered under the warrant to be returned to the Magistrate Judge who signed off on the warrant. Here, rather than actually preparing an inventory, the Government instead prepared a document that provided no information other than when the CSS was used. *See* Ex. 2.

The inventory requirement of Rule 41 and of this particular search warrant matters. Absent such an inventory, a defendant, like Johnson, is left with no way of determining whether law enforcement's search exceeded the scope of the warrant. Further, a defendant, like Johnson, is left with no way of evaluating the accuracy of the assertions of law enforcement. Namely, through the use of this warrant, law enforcement purports to have identified phone numbers associated with Johnson and then used this information to apply for and obtain wiretap authorizations. Then, utilizing information obtained through wiretaps, law enforcement sought and obtained numerous search warrants. However, absent any inventory identifying the information gathered by the CSS, Johnson is left completely unable to test the veracity of law enforcement's assertions that certain phone numbers were associated with him. Instead, he is left with a simple, one-page document, that purports to show the date and time that law enforcement utilized a CSS. The inventory provides absolutely no information, as it is required to do, concerning *what* was seized pursuant to the warrant.

8

Where, as here, a clear violation of Rule 41 has occurred, suppression is warranted "if a defendant is prejudiced or if reckless disregard of proper procedure is evident." *United States v. Nyah*, 928 F.3d 694, 700 (8th Cir. 2019) (quoting *United States v. Spencer*, 439 F.3d 905, 913 (8th Cir. 2006)). In this case, both criteria are apparent. Johnson was clearly prejudiced for the reasons already discussed: he was left with absolutely no mechanism for determining whether the scope of the search conducted by law enforcement exceeded the scope of the warrant (despite its facial invalidity) and he was left with no mechanism for assessing the accuracy of law enforcement's assertions. Johnson is entitled to view the data gathered pursuant to the CSS and that this has been denied has resulted in immeasurable prejudice to him. Information ostensibly gleaned through law enforcement's unconstitutional and unlawful use of the CSS was invariably used by the Government to obtain subsequent wire taps and search warrants.

Additionally, law enforcement's failure to prepare a valid inventory evidences reckless disregard of proper procedure. Review of the "Report and Return Regarding Initial Cell Ste Simulator Warrant" reveals that the document appears to be a form wherein SFO Betz simply filled in the blanks. *See* Ex. 2. In other words, it is reasonable to conclude that this form was created and is utilized in all cases in a vain attempt to satisfy Rule 41's mandate. Rather than attempting to meaningfully prepare actual inventories of the data seized pursuant to CSS warrants, it appears law enforcement has intentionally sought to avoid the requirement in this and all other cases in which CSSs are utilized. This is a reckless disregard of proper procedure warranting suppression.

   D. <u>18 U.S.C. § 3123 Does Not Authorize the Use of a CSS to Discover Johnson's Phone Number(s)</u>

Finally, the statute the Government attempted to utilize in obtaining authorization to use the CSS in this case to "identify the cellular device(s) used by" Johnson, does not contemplate use of a CSS in this manner.

9

In discussing what is required under 18 U.S.C. § 3123, the Southern District of Texas explained the following:

> a court is required to list in any order the identity of the person who is the cell phone subscriber, but only if that identity is known. *See* 18 U.S.C. § 3123(b)(1)(A). Additionally, the court is also required to include the name of the criminal investigation's subject, but again only if that identity is known. *See* 18 U.S.C. § 3123(b)(1)(B). However, regarding the telephone number or other such identifier, Congress mandated explicitly that information be included within the court order. *See* 18 U.S.C. § 3123(b)(1)(C).
>
> \*   \*   \*
>
> The language of § 3123(b)(1) is straightforward in that a telephone number or similar identifier is necessary for a pen register.

*In re the Application of the U.S. for an Order Authorizing the Installation & Use of a Pen Register & Trap & Trace Device*, 890 F. Supp. 2d at 751.

A later decision by the Southern District of Texas discussing the same case, the court explained:

> There is little reported case law considering the governing statutory authority for law enforcement's use of a StingRay device. In the only reported case from this district, Judge Owsley denied the government's application to authorize such a device under the Pen/Trap Statute. Law enforcement had intended to use the device to identify the telephone number of a cell phone used by a suspected drug dealer. But as Judge Owsley persuasively observed, the Pen/Trap Statute requires that a pen/trap order must specify in advance "the number or other identifier" of the targeted phone, in contrast to other information which need be specified only "if known." *Id.* at 751 (*citing* 18 U.S.C. § 3123(b)(1)). *In other words, Congress did not contemplate that a pen/trap order could be used to discover the phone number of the target phone.*

*In re Cell Tower Records Under 18 U.S.C. 2703(D)*, 90 F. Supp. 3d 673, 678 (S.D. Tex. 2015) (discussing *In re the Application of the U.S. for an Order Authorizing the Installation & Use of a Pen Register & Trap & Trace Device*, 890 F. Supp. 2d 747, 751 (S.D. Tex. 2012)) (emphasis added).

10


Despite the fact that Congress did not contemplate the use of 18 U.S.C. § 3123 to discover phone numbers, that is precisely what the Government sought to do here. For this reason, too, this Court should suppress all evidence and information obtained through the Government's use of the CSS in this case.

### III. Conclusion

Based on the foregoing, this Court should suppress all evidence unlawfully and unconstitutionally seized through the Government's use of a CSS in this case and all evidence derived from information or evidence seized pursuant to the fruit of the poisonous tree doctrine. Johnson respectfully requests an evidentiary hearing.

Respectfully submitted,

**Margulis Gelfand, LLC**

*/s/ William S. Margulis*
WILLIAM S. MARGULIS, #37625
JUSTIN K. GELFAND, #62265
8000 Maryland Ave., Ste. 420
St. Louis, MO 63105
Telephone: 314.390.0234
Facsimile: 314.485.2264
bill@margulisgelfand.com
justin@margulisgelfand.com
ATTORNEYS FOR DEFENDANT JOHNSON

**Certificate of Service**

I hereby certify that I filed the foregoing through the Court's CM/ECF system which will provide notice of filing to all counsel of record.

                                        */s/ William S. Margulis*
WILLIAM S. MARGULIS, #37625
JUSTIN K. GELFAND, #62265
8000 Maryland Ave., Ste. 420
St. Louis, MO 63105
Telephone: 314.390.0234
Facsimile: 314.485.2264
bill@margulisgelfand.com
justin@margulisgelfand.com
ATTORNEYS FOR DEFENDANT JOHNSON