UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:18 CR 565 CDP |
| ) | |
| DEMETRIUS TYRESE JOHNSON (1), ) | |
| ) | |
| Defendant. ) | |

### MEMORANDUM AND ORDER

This matter is before the Court on additional pretrial motions filed by defendant Demetrius Johnson. This Order rules on Johnson's motion to suppress statements made after his arrest, motion to suppress evidence seized during execution of a search warrant, and motion to suppress evidence obtained from the use of a cell site simulator, which was also based on a warrant. All pretrial motions in this case were referred to United States Magistrate Judge John M. Bodenhausen under 28 U.S.C. § 636(b). After holding an evidentiary hearing on the motions and considering the parties' extensive briefing, Judge Bodenhausen recommended that the motions be denied. Johnson filed objections. I have conducted *de novo* review of all matters relevant to these motions, including reviewing the transcript of the hearing and examining all evidence introduced,

including the warrant applications and other documents and the video-recorded statement defendant made after his arrest. After doing so, I conclude that Judge Bodenhausen correctly found the facts from the evidence, correctly analyzed the legal arguments, and correctly applied the governing law. I will therefore adopt and sustain the Report and Recommendation issued by Judge Bodenhausen on April 14, 2020.

## Motion to Suppress Statements

Defendant moves to suppress statements he made to law enforcement officers after his arrest in this case on July 18, 2018. The statement was audio and video recorded and the entire interview lasted approximately 14 minutes. Defendant argues that he invoked his right to remain silent by shaking his head when asked whether he wished to make a statement. After carefully watching the video I conclude, as did Judge Bodenhausen, that defendant did not unequivocally invoke his right to remain silent until the end of the interview, and at that time the questioning ceased.

At the beginning of the interview Johnson was informed of his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966), and he stated that he understood the rights. He signed a written waiver form partway through the interview. There was nothing coercive about the interview itself and it mostly consisted of the

2

government agents telling Johnson about the charges he was facing and the evidence they had against him.  I agree that his slight shake of his head initially cannot be considered an unequivocal invocation of the right to remain silent. When the agent asked if he wanted to hear about the case against him, he indicated that he did wish to hear more, and it was only then that they continued with the interview.

I agree with Judge Bodenhausen that there is no evidence to support the argument that Johnson invoked his right to remain silent or his right to counsel.  It is clear from the totality of the circumstances that the atmosphere was not coercive, that Johnson understood his rights and waived them, and that his statements after his arrest were at all times voluntarily made.  I will adopt the Report and Recommendation and will deny the motion to suppress statements.

## Motion to Suppress Evidence Seized During Search of Residence

Defendant argues that the search warrant authorizing the search of his residence on July 18, 2018 was not supported by probable cause.  He seeks suppression of all the evidence seized from the residence also seeks suppression of a cell phone that was found in a car parked in the driveway, which defendant contends was beyond the scope of the warrant.

I have reviewed the warrant application and affidavit and conclude that it

provides more than sufficient evidence to support a finding that there was probable cause to believe that evidence of the drug trafficking conspiracy would be found at the residence.   The affidavit provides information obtained from numerous confidential sources, from surveillance of Johnson and other alleged co-conspirators and of the residence, and information obtained from Title III wiretaps.  Much of the information provided by confidential sources was corroborated by surveillance, wiretaps and/or controlled purchases of narcotics from Johnson and others involved in the conspiracy.   The warrant was valid and supported by probable cause.

Johnson also challenges the seizure of a flip phone from a vehicle parked in front of the residence.   The warrant authorized search of the "residence," not of the "premises" and did not mention automobiles.   Evidence at the hearing, however, showed that the law enforcement officers could see the flip-phone on the seat of the vehicle from outside the vehicle.   As they knew that cell phones, and particularly flip-phones, were used in this narcotics conspiracy, the potential evidentiary value of the phone was obvious from this plain view into the car.  Judge Bodenhausen correctly analyzed the law regarding warrantless searches and I agree with his conclusion that the seizure of the phone was lawful under both the automobile and plain view exceptions to the warrant requirement.   I will deny the

motion to suppress evidence found during the search on July 18, 2018.

**Motion to Suppress Evidence Gained by Use of Cell Site Simulator**

As part of the investigation, law enforcement officers obtained a warrant to use a cell site simulator in the vicinity of locations where they knew Johnson was located. The purpose of this investigative technique was to identify a cell phone or phones used by Johnson as part of his drug distribution activities. Authorities used the cell site simulator in "canvass" mode in different locations in Johnson's vicinity. When they found identifiers for the same cell phone in different locations where they knew Johnson was present, they were able to conclude that the number belonged to a cell phone that Johnson was using.[1] They did not capture the content of any conversations, nor did they use the device to locate Johnson himself or any other person.

Johnson argues that any evidence obtained by use of the cell site simulator was obtained in violation of the Fourth Amendment. He argues that the warrant was facially invalid because it did not specify a particular place to be searched or particular things to be seized, that the search warrant return did not comply with

---

[1] Judge Bodenhausen's Report and Recommendation explains the technical context of the use of a cell-site simulator. [ECF 782 at p. 24-25]. Neither party has any dispute with his description, and I need not repeat it here. *United States v. Tutis,* 216 F. Supp. 3d 467 (D.N.J. 2016), which upheld a state-court warrant authorizing use of a cell-site simulator in "canvass" mode, also describes how the device is used to obtain a previously unknown cell number, as opposed to "locate" mode which provides a way to locate a particular cell phone when the number is already known. *See id.* at p. 471-72.

5

the requirement in the warrant or with Rule 41, Fed. R. Crim. P., and that identification of phone numbers is not contemplated by the pen register/trap and trace statute, 18 U.S.C. § 3123. He also argues that compliance with the warrant caused the government to destroy potentially exculpatory evidence.

There is no doubt that the warrant application and affidavit provide ample probable cause to believe that Johnson was involved in the commission of crimes and that the use of the cell site simulator would reveal evidence of that criminal activity by identifying one or more cell phone numbers that Johnson was using in his narcotics business. The Court is aware of only one case that held that a search warrant, as opposed to a pen register or trap and trace order, is required for use of a cell site simulator in "canvass" mode. *See In re Application for Order Authorizing Pen Register and Trap and Trace Device*, 890 F. Supp. 2d 747 (S.D. Tx. 2012) (rejecting application for pen register/trap and trace order). Whether a search warrant is actually required in all cases is not a matter of settled law, but I need not decide that because here there was a warrant and it was based on probable cause. The warrant also provided some of the information that would be required for a pen register or trap and trace order under 18 U.S.C. § 3123, although it did not list a specific cell phone number as that is the information it was seeking.

Although a cell site simulator warrant cannot be executed in exactly the

same manner as a regular search warrant, it is not invalid for lack of particularity in describing the place to be searched and the things to be seized, as the Fourth Amendment requires and as discussed in *Dalia v. United States*, 441 U.S. 238, 255 (1979).  In *United States v. Tutis*, supra, which is the only case I am aware of that is on point with this case involving a warrant authorizing use of the device in "canvass" mode, the Court determined that specifying that the device would only be used in the issuing district and only in locations near where authorities knew the defendant to be present was sufficiently particular.   216 F. Supp. 3d at 480.   The warrant was also sufficiently specific as to the things to be seized, because it indicated that what would be seized would only be the data necessary to identify cellular devices used by defendant.   I agree with the *Titus* court's analysis and conclude that this warrant meets the particularity requirements and does not give law enforcement a roving commission to search beyond what was intended to be authorized.

Although Judge Bodenhausen concluded that this was most akin to a warrant for a tracking device, and I agree that is a reasonable conclusion, no analogies appear to be precisely on point.   But obtaining a warrant based on probable cause—as the investigating agents did here—is the solution to many of the Fourth Amendment issues implicated by emerging technologies.  *See, e.g., United States*

7

*v. Carpenter,* 138 S.Ct 2206 (2018) (historical cell site location information); *Riley v. California*, 573 U.S. 373 (2014) (contents of cell phone); *United States v. Jones,* 565 U.S. 400 (2012) (GPS location data).   That is what the agents did here. Because the emerging technologies present new issues, exact correlation with the format of previous search warrants cannot always be required.   Under the totality of the circumstances presented here, the warrant was sufficiently particular.

Defendant's challenge to the form of the warrant return is likewise unpersuasive.   The warrant return in this case was a specific form required by the warrant itself that specified the date and time the warrant was obtained (February 7, 2018 at 16:30), the date and time agents first began collecting information (February 8, 2018 at 06:30), and the date and time they terminated gathering information (February 8, 2018 at 12:00 p.m.).   As Judge Bodenhausen concluded, this return complied with the requirements for returns on tracking device orders contained in Rule 41(f)(2), although it does not fit into the requirements of Rule 41(f)(1) for returns of warrants authorizing search and seizure for people or property or for electronically stored information.   The information provided by this return is sufficient to explain when the device was used and what was obtained.   The warrant itself explicitly stated that this was the information that should be included in the return.   Like the judge in *Tutis*, there is no danger here

8

that the issuing judge would be misled about what she was authorizing and what was done pursuant to the warrant.  That today's emerging technologies may call for modifications to forms or formats does not detract from the validity of the search, and the form here fully meets the purpose of a return.

Finally, Johnson argues that compliance with this warrant constitutes the government's intentional and bad faith destruction of potentially exculpatory evidence.  I disagree.  The warrant specified that once cellular devices used by Johnson were identified, the investigative agencies must end the data collection and must delete all information collected concerning other cellular devices.  Defendant has not indicated anything that could show bad faith—indeed, the warrant required precisely what was done here—nor has he shown that the deleted information was even potentially exculpatory.  Although this is a novel argument and there do not appear to be any cases discussing the issue, I see no constitutional or other issues with what was done here.

Accordingly,

**IT IS HEREBY ORDERED** that the Report and Recommendation of United States Magistrate Judge John M. Bodenhausen [782] is **SUSTAINED, ADOPTED, and INCORPORATED** herein.

**IT IS FURTHER ORDERED** that defendant Demetrius Tyrese Johnson's

9

motions to suppress statements [582], physical evidence [583] and cell-site simulator evidence [584] are denied.

                                                                   _____
                                                                   CATHERINE D. PERRY
                                                                   UNITED STATES DISTRICT JUDGE

Dated this 15th day of July, 2020.