UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:18-CR-00565-CDP |
| | ) |
| DEMETRIUS TYRESE JOHNSON, | ) |
| aka "Meechie"; "DJ"; "Huncho," | ) |
| | ) |
| Defendant. | |

**GUILTY PLEA AGREEMENT**

Come now the parties and hereby agree, as follows:

1. **PARTIES**:

The parties are the defendant Demetrius Tyrese JOHNSON, represented by defense counsel Justin Gelfand and William Margulis, and the United States of America (hereinafter "United States" or "Government"), represented by the Office of the United States Attorney for the Eastern District of Missouri.  This agreement does not, and is not intended to, bind any governmental office or agency other than the United States Attorney for the Eastern District of Missouri.  The Court is neither a party to nor bound by this agreement.  However, if the Court accepts the plea agreement as to the sentence or sentencing range, then the Court will be bound by said agreement pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C).

2. **GUILTY PLEA**:

Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), in exchange for the defendant's voluntary plea of guilty to Counts One and Two of the Superseding Information, the government agrees that no further federal prosecution will be brought in this District relative to

1

the defendant's participation in a conspiracy to distribute heroin, fentanyl, and other controlled substances between September of 2014 and the date of this plea, of which the Government is aware at this time. This includes the understanding that no further federal prosecution will be brought in this District relative to the defendant's distribution of fentanyl on or about October 14, 2016, or relative to the death of J.W. as a result of the ingestion of said fentanyl. The defendant acknowledges that this disposition confers upon the defendant the benefit of not exposing him to the twenty (20)-year mandatory minimum sentence that would be required if the defendant were to be convicted of Count Two, as charged in the First Superseding Indictment (Doc. #179).

Additionally, the Government agrees that no further prosecution will be brought in this District against the defendant relative to his role in the homicide of David Bryant on December 3, 2016, which occurred in connection with the drug trafficking conspiracy outlined herein. The parties agree that, pursuant to United States Sentencing Guidelines Section 1B1.2(a), the fact that David Bryant was murdered in furtherance of the drug trafficking conspiracy constitutes part of the "offense of conviction" such that Section 1B1.2(a) calls for the Court to apply the guidelines applicable to the more serious offense rather than the offense charged in the Superseding Information.

**In addition, pursuant to Rule 11(c)(1)(C), Federal Rules of Criminal Procedure, the parties agree that the defendant's sentence should be 180 months (15 years).** This agreement shall abide, notwithstanding the application or non-application of any particular Sentencing Guidelines, including any Guidelines contemplated by this agreement. If the Court informs the parties prior to sentencing that it will reject this agreement that it intends to sentence defendant to a sentence not in conformity with this agreement, then either party may withdraw from the plea

agreement and the defendant will have an opportunity to withdraw his guilty plea pursuant to Rule 11(c)(5). In the event either party withdraws from the agreement, any statements made by any party in this agreement shall not be admissible in any trial of this case. The parties further agree that neither party shall request a sentence above or below the sentencing agreement in this paragraph pursuant to any chapter of the Guidelines, Title 18, United States Code, Section 3553, or any other provision or rule of law not addressed herein.

The defendant also agrees, pursuant to the guilty plea to both counts of the Superseding Information, to forfeit to the United States all property subject to forfeiture under the applicable statute(s), including but not limited to:

- Approximately $3,137.00 U.S. Currency seized on July 18, 2018;
- Approximately $61,980.00 U.S. Currency seized on July 18, 2018;
- Smith and Wesson 9mm semi-automatic pistol;
- Taurus 9mm semi-automatic pistol;
- Glock model 19, 9mm semi-automatic pistol;
- Glock model 17, 9x19 caliber semi-automatic pistol;
- Glock 23C model, .40 caliber semi-automatic pistol;
- SCCY CPX-2 9mm Handgun;
- Anderson Arms AR-15 Rifle;
- Glock 27 Pistol, .40 caliber;
- Taurus G2C 9mm Pistol;
- Anderson Manufacturing AM15 Rifle;
- Glock 22C .40 caliber Pistol;
- Mossberg .22 Rifle;
- Savage 67H 12 gauge Shotgun;
- Intratec CAT45 .45 caliber Pistol; and a
- Glock 21 .45 caliber semi-automatic pistol.

3. **ELEMENTS**:

Count One

As to Count One of the Superseding Information, the defendant admits to knowingly violating Title 21, United States Code, Sections 846 and 841, and admits there is a factual basis for the plea and further fully understands that the elements of the crime are:

(a) Beginning at an unknown time, but including September of 2014 and through the date of this Superseding Information, within the Eastern District of Missouri, the defendant and his co-defendants, and/or other persons known and unknown to the government, reached an agreement or came to an understanding to distribute and possess, with the intent to distribute, mixtures or substances containing detectable amounts of fentanyl; and

(b) That the defendant voluntarily and intentionally joined in the agreement or understanding, either at the time it was first reached or at some time while it was still in effect; and

(c) That at the time the defendant joined in the agreement or understanding, he knew the purpose of the agreement; and

(d) That the quantity of fentanyl attributable to the defendant, as part of his participation in the conspiracy, and as a result of his own conduct and the conduct of other conspirators reasonably foreseeable to him, is more than 400 grams.

Count Two

As to Count Two of the Superseding Information, the defendant admits to knowingly violating Title 18, United States Code, Section 922(g), and admits there is a factual basis for the plea and further fully understands that the elements of the crime are:

(a) On or about July 18, 2018, within the Eastern District of Missouri, the defendant knowingly and intentionally possessed one or more firearms; and

(b) That prior to July 18, 2018, the defendant had been convicted of one or more crimes punishable by a term of imprisonment exceeding one year; and

(c) That on July 18, 2018, the defendant knew that he had been convicted of one or more crimes punishable by a term of imprisonment exceeding one year; and

(d) That the aforementioned firearms traveled in interstate commerce prior to the defendant's possession of them on July 18, 2018.

4.  **FACTS**:

The parties agree that the facts in this case are as follows and that the government would prove these facts beyond a reasonable doubt if the case were to go to trial. These facts may be considered as relevant conduct pursuant to Section 1B1.3:

Beginning at an unknown time, but up to and including September of 2014 and through the date of this Superseding Information, defendant Demetrius Tyrese JOHNSON agreed with and led his co-defendants in distributing heroin and fentanyl to drug customers seeking fentanyl in the St. Louis Metropolitan area, within the Eastern District of Missouri. JOHNSON maintained at least one cellular telephone, which he passed around to various members of the conspiracy for the purpose of having the possessor of the phone distribute narcotics on his behalf. JOHNSON would then collect a portion of the drug proceeds in return. In addition to acting as a leader and orchestrating the passing around of these phones, JOHNSON also occasionally maintained possession of the phone and acted as a distributor himself, dealing fentanyl to customers who would contact the telephone number.

On or about October 14, 2016, C.C., whose identity is known to the parties, contacted the telephone number (314) 537-0649 for the purpose of obtaining fentanyl. This phone number was one of the phones maintained by JOHNSON which he passed around to other members of the conspiracy. C.C. purchased an amount of fentanyl from JOHNSON on that date, then used some of it himself while also sharing some with J.W., whose identity is known to the parties. On October 15, 2016, members of J.W.'s family found her deceased in her home. The Medical Examiner determined that J.W. died as a result of acute fentanyl intoxication. Testimony at trial would establish that, but for the fentanyl she ingested that came from JOHNSON, J.W. would not have died.

On or about December 2, 2016, JOHNSON contacted Christopher Rhodes at phone number (314) 267-5221 while JOHNSON was incarcerated at the St. Louis City Justice Center. JOHNSON inquired about the whereabouts of the cellular telephone and/or telephones being used by the co-conspirators to distribute fentanyl and heroin, asking Rhodes if "you got them lines on you." Rhodes informed JOHNSON that Armond Calvin, who also goes by the alias "Mon," had the phones, and proceeded to update JOHNSON on the status of the conspiracy, including that a rival drug dealer was attempting to steal customers from Rhodes and other co-conspirators and that Rhodes wanted to retaliate.

On or about December 3, 2016, Christopher Rhodes and Armond Calvin, co-conspirators who were distributing fentanyl on behalf of JOHNSON's organization, contacted JOHNSON in need of a firearm because they encountered David Bryant selling fentanyl to a drug customer who had been planning to purchase drugs from Rhodes and Calvin in the parking lot of a Jack-in-the-Box located in the City of St. Louis. JOHNSON had been released from custody the previous

night, and Calvin had briefly returned JOHNSON's Glock 27, .40 caliber firearm to him. Following the theft of their customer by Bryant in the Jack-in-the-Box parking lot, Rhodes and Calvin advised JOHNSON of the situation and met with JOHNSON at or near the parking lot of the Family Dollar store located at 4250 South Broadway. There, JOHNSON provided them with his Glock 27, .40 caliber firearm with a laser sight for the purpose of retaliating against victim Bryant for stealing their drug customer. While Rhodes drove, Calvin used the firearm JOHNSON had provided and fired multiple shots into the blue 2013 Dodge Avenger in which Bryant was riding, killing Bryant in the 4300 block of Oregon in the City of St. Louis, within the Eastern District of Missouri. Jail calls placed by James Fields to Calvin and other unindicted conspirators at phone number (314) 267-5221 following the homicide referred to the firearm as being "Meechie's" gun. "Meechie" is one of JOHNSON's aliases.

On or about July 18, 2018, as part of the arrest operation on this case, JOHNSON was arrested and a search warrant was executed at his residence at 1264 Grant in St. Louis County. During their search of the residence, officers located a Glock model 22 with a loaded magazine, a Springfield Armory SD firearm with a loaded magazine, and an Anderson Manufacturing AM15 with loaded magazine that belonged to JOHNSON. The parties agree that JOHNSON was a convicted felon and knew of his status as a convicted felon prior to and during his possession of the firearms and was, therefore, prohibited from possessing them. The parties further agree that all of the firearms traveled in interstate commerce prior to JOHNSON's possession of it on July 18, 2018.

While the amount of fentanyl attributable to the defendant as a result of his participation in the drug trafficking conspiracy is not subject to precise calculation, the parties agree that the

amount of fentanyl for which the defendant is accountable, including the reasonably foreseeable conduct of his co-conspirators, is more than 400 grams and less than 1.2 kilograms. Expert testimony presented at trial would establish that this amount of fentanyl is consistent with the intent to distribute the substance, as opposed to personal use.

5. **STATUTORY PENALTIES**:

Count One

The defendant fully understands that the maximum possible penalty provided by law for the crime to which the defendant is pleading guilty is imprisonment of not more than life, a fine of not more than $10,000,000.00, or both such imprisonment and fine. The Court shall also impose a period of supervised release of not less than five (5) years. The defendant also fully understands that the crime to which a guilty plea is being entered requires a mandatory minimum term of imprisonment of at least ten (10) years.

Count Two

The defendant fully understands that the maximum possible penalty provided by law for the crime to which the defendant is pleading guilty is imprisonment of not more than ten (10) years, a fine of not more than $250,000.00, or both such imprisonment and fine. The Court shall also impose a period of supervised release of not more than three (3) years.

6. **U. S. SENTENCING GUIDELINES: 2018 MANUAL:**

The defendant understands that this offense is affected by the U. S. Sentencing Guidelines and the actual sentencing range is determined by both the Total Offense Level and the Criminal History Category. To assist the Court in determining the impact of the plea agreement, the parties submit the following U.S. Sentencing Guidelines analysis:

8

**COUNT ONE CALCULATIONS**

    a.    **Chapter 2 Offense Conduct**:

    (1)  **Base Offense Level**: As agreed to herein, the facts constitute first-degree murder under Title 18, United States Code, Section 1111, as the murder occurred in furtherance of the drug trafficking offense outlined above. The parties agree that the Base Offense Level found in Section 2A1.1 is 43.

    (2)  **Specific Offense Characteristics**: The parties agree that the following Specific Offense Characteristics apply: None.

    b.    **Chapter 3 Adjustments**:

    (1)  **Acceptance of Responsibility**: The parties recommend that two (2) levels should be deducted pursuant to Section 3E1.1(a), because the defendant has clearly demonstrated acceptance of responsibility.

    (2)  **Other Adjustments**: The parties agree that the following additional adjustments apply:

The parties agree that four (4) points should be added pursuant to Section 3B1.1(a), as the defendant was an organizer or leader of the drug trafficking organization outlined herein that involved five or more participants or was otherwise extensive.

    c.    **Other Adjustment(s)/Disputed Adjustments**: None.

    d.    **Estimated Total Offense Level**: The parties estimate that the Total Offense Level is 45, unless defendant is a Career Offender. Pursuant to Section 5, application note 2, if the Total Offense Level is greater than 43, the offense level is to be treated as an offense level of 43.

**COUNT TWO CALCULATIONS**

a. **Chapter 2 Offense Conduct**:

(1) **Base Offense Level**: The parties agree that the base offense level is found in Section 2K2.1 and depends on the nature of the firearm, the defendant's criminal history and other factors therein.

(2) **Specific Offense Characteristics**: The parties agree that the following Specific Offense Characteristics apply:   None.

b. **Chapter 3 Adjustments**:

(1) **Acceptance of Responsibility**: The parties recommend that two (2) levels should be deducted pursuant to Section 3E1.1(a), because the defendant has clearly demonstrated acceptance of responsibility.

(2) **Other Adjustments**: The parties agree that the following additional adjustments apply:   None.

c. **Other Adjustment(s)/Disputed Adjustments**: None.

d. **Estimated Total Offense Level**: The parties estimate that the Total Offense Level is 14, 20, or 24, as found in Sentencing Guidelines § 2K2.1(a), unless defendant is a Career Offender or Armed Career Criminal.  Depending on the underlying offense and defendant's criminal history, defendant could be a Career Offender pursuant to Section 4B1.1 or an Armed Career Criminal pursuant to Title 18, United States Code, Section 924(e) and Section 4B1.4.  If the Court finds defendant is a Career Offender or an Armed Career Criminal or both, the Total Offense Level may be higher and the Criminal History Category may be as high as Category VI. Defendant has discussed these possibilities with defense counsel.  Both parties reserve the right to argue that the defendant is or is not a Career Offender or an Armed Career Criminal.

10

**CALCULATIONS APPLICABLE TO ALL COUNTS**

  e. **Criminal History**: The determination of the defendant's Criminal History Category shall be left to the Court. Either party may challenge, before and at sentencing, the finding of the Presentence Report as to the defendant's criminal history and the applicable category. The defendant's criminal history is known to the defendant and is available in the Pretrial Services Report.

  f. **Effect of Parties' U.S. Sentencing Guidelines Analysis**:

  The parties agree that the Court is not bound by the Guidelines analysis agreed to herein. The parties may not have foreseen all applicable Guidelines. The Court may, in its discretion, apply or not apply any Guideline despite the agreement herein and the parties shall not be permitted to withdraw from the plea agreement. But, if the Court accepts the plea agreement in this case, it is bound by the sentencing agreement in paragraph 2 above. And, if the Court rejects the plea agreement as to the particular sentence agreed to by the parties in paragraph 2 above, the defendant will be allowed to withdraw his guilty plea pursuant to Rule 11(c)(5).

7. **WAIVER OF APPEAL AND POST-CONVICTION RIGHTS**:

  a. **Appeal**: The defendant has been fully apprised by defense counsel of the defendant's rights concerning appeal and fully understands the right to appeal the sentence under Title 18, United States Code, Section 3742.

  (1) **Non-Sentencing Issues**: The parties waive all rights to appeal all non-jurisdictional, non-sentencing issues, including, but not limited to, any issues relating to pretrial motions, discovery and the guilty plea, the constitutionality of the statute(s) to which defendant is pleading guilty and whether defendant's conduct falls within the scope of the statute(s).

11

      (2) **Sentencing Issues**: In the event the Court accepts the plea and, in sentencing the defendant follows the sentencing agreement in paragraph 2, then, as part of this agreement, the parties hereby waive all rights to appeal all sentencing issues.

    b.     **Habeas Corpus**: The defendant agrees to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to Title 28, United States Code, Section 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel.

    c.     **Right to Records**: The defendant waives all rights, whether asserted directly or by a representative, to request from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including any records that may be sought under the Freedom of Information Act, Title 5, United States Code, Section 522, or the Privacy Act, Title 5, United States Code, Section 552(a).

8.     **OTHER:**

    a.     **Disclosures Required by the United States Probation Office**:

The defendant agrees to truthfully complete and sign forms as required by the United States Probation Office prior to sentencing and consents to the release of these forms and any supporting documentation by the United States Probation Office to the government.

    b.     **Civil or Administrative Actions not Barred; Effect on Other Governmental Agencies**:

Nothing contained herein limits the rights and authority of the United States to take any civil, tax, immigration/deportation or administrative action against the defendant.

    c.     **Supervised Release**: Pursuant to any supervised release term, the Court will impose standard conditions upon the defendant and may impose special conditions related to the

crime defendant committed. These conditions will be restrictions on the defendant to which the defendant will be required to adhere. Violation of the conditions of supervised release resulting in revocation may require the defendant to serve a term of imprisonment equal to the length of the term of supervised release, but not greater than the term set forth in Title 18, United States Code, Section 3583(e)(3), without credit for the time served after release. The defendant understands that parole has been abolished.

d. **Mandatory Special Assessment**: Pursuant to Title 18, United States Code, Section 3013, the Court is required to impose a mandatory special assessment of $100 per count for a total of $200, which the defendant agrees to pay at the time of sentencing. Money paid by the defendant toward any restitution or fine imposed by the Court shall be first used to pay any unpaid mandatory special assessment.

e. **Possibility of Detention:** The defendant may be subject to immediate detention pursuant to the provisions of Title 18, United States Code, Section 3143.

f. **Fines, Restitution and Costs of Incarceration and Supervision**: The Court may impose a fine, restitution (in addition to any penalty authorized by law), costs of incarceration and costs of supervision. The defendant agrees that any fine or restitution imposed by the Court will be due and payable immediately. Pursuant to Title 18, United States Code, Section 3663A, an order of restitution is mandatory for all crimes listed in Section 3663A(c). Regardless of the Count of conviction, the amount of mandatory restitution imposed shall include all amounts allowed by Section 3663A(b) and the amount of loss agreed to by the parties, including all relevant conduct loss. The defendant agrees to provide full restitution to all victims of all charges in the Superseding Information.

g. **Forfeiture**: The defendant agrees the stipulated facts above are sufficient to support forfeiture of certain assets pursuant to the applicable forfeiture authorities. Defendant specifically agrees to the forfeiture of the following:

- Approximately $3,137.00 U.S. Currency seized on July 18, 2018;
- Approximately $61,980.00 U.S. Currency seized on July 18, 2018;
- Smith and Wesson 9mm semi-automatic pistol;
- Taurus 9mm semi-automatic pistol;
- Glock model 19, 9mm semi-automatic pistol;
- Glock model 17, 9x19 caliber semi-automatic pistol;
- Glock 23C model, .40 caliber semi-automatic pistol;
- SCCY CPX-2 9mm Handgun;
- Anderson Arms AR-15 Rifle;
- Glock 27 Pistol, .40 caliber;
- Taurus G2C 9mm Pistol;
- Anderson Manufacturing AM15 Rifle;
- Glock 22C .40 caliber Pistol;
- Mossberg .22 Rifle;
- Savage 67H 12 gauge Shotgun;
- Intratec CAT45 .45 caliber Pistol; and a
- Glock 21 .45 caliber semi-automatic pistol.

The defendant agrees the Court may enter a consent preliminary order of forfeiture any time before sentencing, and such Order will become final as to the defendant when it is issued and will be part of the sentence. The defendant agrees not to object to any administrative, civil or criminal forfeiture brought against any assets subject to forfeiture. The defendant will execute any documents and take all steps needed to transfer title or ownership of said assets to the government and/or to rebut the claims of nominees and/or alleged third party owners. The defendant knowingly and intelligently waives all constitutional and statutory challenges to any forfeiture carried out in accordance with this plea agreement, including but not limited to that defendant was not given adequate notice of forfeiture in the charging instrument.

The defendant knowingly and voluntarily waives any right, title, and interest in all items seized by law enforcement officials during the course of their investigation, whether or not they are subject to forfeiture, and agrees not to contest the vesting of title of such items in the United States. The defendant agrees that said items may be disposed of by law enforcement officials in any manner.

9.   **ACKNOWLEDGMENT AND WAIVER OF THE DEFENDANT'S RIGHTS**:

In pleading guilty, the defendant acknowledges, fully understands and hereby waives his rights, including but not limited to: the right to plead not guilty to the charges; the right to be tried by a jury in a public and speedy trial; the right to file pretrial motions, including motions to suppress evidence; the right at such trial to a presumption of innocence; the right to require the government to prove the entire case against the defendant beyond a reasonable doubt; the right not to testify; the right not to present any evidence; the right to be protected from compelled self-incrimination; the right at trial to confront and cross-examine adverse witnesses; the right to testify and present evidence and the right to compel the attendance of witnesses. The defendant further understands that by this guilty plea, the defendant expressly waives all the rights set forth in this paragraph.

The defendant fully understands that the defendant has the right to be represented by counsel, and if necessary, to have the Court appoint counsel at trial and at every other stage of the proceeding. The defendant's counsel has explained these rights and the consequences of the waiver of these rights. The defendant fully understands that, as a result of the guilty plea, no trial will, in fact, occur and that the only action remaining to be taken in this case is the imposition of the sentence.

The defendant is fully satisfied with the representation received from defense counsel. The defendant has reviewed the government's evidence and discussed the government's case and all possible defenses and defense witnesses with defense counsel. Defense counsel has completely and satisfactorily explored all areas which the defendant has requested relative to the government's case and any defenses.

The guilty plea could impact defendant's immigration status or result in deportation. In particular, if any crime to which defendant is pleading guilty is an "aggravated felony" as defined by Title 8, United States Code, Section 1101(a)(43), removal or deportation is presumed mandatory. Defense counsel has advised the defendant of the possible immigration consequences, including deportation, resulting from the plea.

10.  **VOLUNTARY NATURE OF THE GUILTY PLEA AND PLEA AGREEMENT**:

This document constitutes the entire agreement between the defendant and the government, and no other promises or inducements have been made, directly or indirectly, by any agent of the government, including any Department of Justice attorney, concerning any plea to be entered in this case. In addition, the defendant states that no person has, directly or indirectly, threatened or coerced the defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.

The defendant acknowledges that the defendant has voluntarily entered into both the plea agreement and the guilty plea. The defendant further acknowledges that this guilty plea is made of the defendant's own free will and that the defendant is, in fact, guilty.

11.  **CONSEQUENCES OF POST-PLEA MISCONDUCT**:

16

After pleading guilty and before sentencing, if defendant commits any crimes, violates any conditions of release, violates any term of this guilty-plea agreement, intentionally provides misleading, incomplete or untruthful information to the U.S. Probation Office or fails to appear for sentencing, the United States will be released from its obligations under this agreement. The Government may also, in its discretion, proceed with this agreement and may advocate for any sentencing position supported by the facts, including but not limited to obstruction of justice and denial of acceptance of responsibility.

12. **NO RIGHT TO WITHDRAW GUILTY PLEA**:

Pursuant to Rule 11(c) and (d), Federal Rules of Criminal Procedure, the defendant understands that there will be no right to withdraw the plea entered under this agreement, except where the Court rejects those portions of the plea agreement which deal with charges the government agrees to dismiss or not to bring or as set forth in Paragraph 2 above. If, however, the Court informs the parties prior to sentencing that it will reject this agreement or that it intends to sentence the defendant to a sentence not in conformity with this agreement, then either party may withdraw from the plea agreement and the defendant will have an opportunity to withdraw his guilty plea pursuant to Federal Rule of Criminal Procedure 11(c)(5).

8/26/2020
Date

ANGIE E. DANIS, #64805MO
LISA M. YEMM, #64601MO
Assistant United States Attorneys

8/29/20
Date

DEMETRIUS TYRESE JOHNSON
Defendant

9/1/2020
Date

JUSTIN GELFAND
WILLIAM MARGULIS
Attorney for Defendant

18