# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No.    4:18-CR-565-CDP |
| ) | |
| DEMETRIUS T. JOHNSON, ) | |
| ) | |
| Defendant. ) | |

## JOHNSON'S SENTENCING MEMORANDUM

Defendant Demetrius T. Johnson ("Johnson"), by and through undersigned counsel, respectfully submits this memorandum to assist this Court in fashioning a sentence that is "sufficient, but not greater than necessary" to achieve the statutory objectives of punishment. 18 U.S.C. § 3553(a). Based on the unique circumstances of this case, Johnson concurs with the Government that a sentence of 180 months (15 years) is appropriate.

The 26-year-old father who stands before this Court has fully accepted responsibility for his conduct, is extremely remorseful for what he has done, and looks forward to turning his life around following his incarceration. Johnson has always played an active role in his 3-year-old son's life and he continues to have daily contact with him. While his childhood was not easy, Johnson has done his best to be there for his son—while certainly making mistakes along the way. While he makes no excuse for the conduct that brings him before this Court, Johnson respectfully asks this Court to consider that he was raised in poverty by a single mother and witnessed extensive drug use and violence on a daily basis during his upbringing in the Peabody Housing Complex. While this does not excuse his actions, it does help to explain them. Significantly, the United States concurs, by written plea agreement pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), that a sentence of 180 months in this case is appropriate.

As Congress and the Supreme Court acknowledge, this Court is charged with the responsibility of evaluating Johnson as an individual in crafting an appropriate sentence that is particularly tailored to him. *See Koon v. United States*, 518 U.S. 81, 113 (1996) ("It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue"); *see also* 18 U.S.C. § 3553(a)(1) ("The court…shall consider…the history and characteristics of the defendant").

## I.   Procedural Background

On June 28, 18, Johnson was charged in an indictment along with 14 co-defendants. (Doc. 1). On September 10, 2020, Johnson pled guilty, pursuant to Rule 11(c)(1)(C) and a written plea agreement, to two counts of a two-count superseding information. (Doc. 855). Count 1 charges conspiracy to distribute fentanyl and Count 2 charges him with being a felon in possession of a firearm. (Doc. 853).

On November 12, 2020, the United States Probation Office issued a disclosure Presentence Investigation Report ("PSR"). (Doc. 912). On December 3, 2020, Johnson filed his acceptance to the PSR. (Doc. 921). On December 10, 2020, the Probation Office issued its final PSR. (Doc. 926).[1]

## II.   Legal Standard

As this Court is aware, Congress has mandated that the sentence imposed in this case be "sufficient, but not greater than necessary" to achieve the objectives of punishment. 18 U.S.C. § 3553(a). The United States Sentencing Guidelines, while advisory, "are no longer mandatory."

---

[1] On December 10, 2020, this Court issued a preliminary order of forfeiture. (Doc. 925). The defense has reviewed the order and has no objection to the Court's entry of a final order of forfeiture consistent with the preliminary order.

*United States v. Ture*, 450 F.3d 352, 356 (8th Cir. 2006); *see also United States v. Booker*, 543 U.S. 220, 224 (2005).

As the United States Court of Appeals for the Eighth Circuit has established, the methodology this Court should follow post-*Booker* is the following:

> In sentencing a defendant, a district court must first determine the advisory sentencing range as recommended by the Guidelines . . .. Next, the district court should decide if any applicable Guidelines provisions permit a traditional "departure" from the recommended sentencing range . . .. The term "departure" is "a term of art under the Guidelines and refers only to non-Guidelines sentences imposed under the framework set out in the Guidelines" . . .. The calculation of the initial advisory Guidelines range, along with any applicable departures, results in a "final advisory Guidelines sentencing range" . . .. Finally, in determining the actual sentence that should be imposed, a district court must consider whether the factors in 18 U.S.C. § 3553(a) justify a "variance" outside the final advisory Guidelines sentencing range . . .. As opposed to a "departure," a "variance" refers to a "non-Guidelines sentence" based on the factors enumerated in Section 3553(a).

*United States v. Lozoya,* 623 F.3d 624, 625-26 (8th Cir. 2010) (citations omitted).

### III.    Presentence Investigation Report

Johnson fully concurs with the Presentence Investigation Report ("PSR"). (Doc. 926). Specifically, Johnson agrees that this case constitutes the first time he has ever been imprisoned, that his criminal history category is I, that he has a young son, that he witnessed terrible violence as he was growing up, and that he would benefit from participating in the Residential Drug Abuse Program ("RDAP") while incarcerated.

### IV.    Section 3553(a) Factors

As a matter of law, this Court must not presume the Guideline range reasonable, but must make an individual assessment of the 18 U.S.C. § 3553(a) factors based on all the facts presented. *Gall v. United States*, 552 U.S. 38, 50 (2007). Based upon a consideration of the statutory sentencing factors set out in 18 U.S.C. § 3553(a), a sentence of 180 months is warranted in this case.

3

Section 3553(a) sets forth a general directive to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing. Section 3553(a) then lists seven factors that a sentencing court must consider. Especially relevant to this case, and supportive of the parties' requested sentence, are the following factors:

    A.    <u>Offense and Offender Characteristics – 18 U.S.C. § 3553(a)(1)</u>

While the offenses for which Johnson are being sentenced are serious, it is important to not lose sight of the fact that Johnson has lived a difficult life defined by drug use and violence. Johnson was raised, along with his 4 siblings, by his mother in the Peabody Housing Projects and witnessed shootings on a regular basis. When he was 11, he witnessed his first murder. And, sadly, his brother was shot and killed in 2016. There are no words to describe the impact on a child who witnesses a murder and experience the loss of a close family member—all within a short time frame.

As a child, Johnson's family was evicted from housing and their electricity would be turned off at various times. Johnson's father was not involved in raising him but would occasionally drop in during the holidays. While he was faced with constant obstacles, Johnson did his best to focus his energy on positive things. One way he did this was to focus on boxing—a sport in which he excelled and a skillset that he worked extremely hard to hone.

Johnson has been diagnosed with asthma, high blood pressure, and a rotator cuff injury. In 2018, he was stabbed in the arm and, while in custody for this case, Johnson was the victim of an attack by a fellow inmate and stabbed in the neck. He takes medication and is in pain.

Johnson has struggled with substance abuse issues related to his use of alcohol and marijuana and he concurs with the Probation Office's recommendation that he be considered for participation in RDAP during his incarceration. (Doc. 926 at ¶ 93).

Despite his difficult upbringing, Johnson is a man who is respected, loved, and trusted by his family and friends. As reflected in the numerous letters from his family that will be submitted to this Court contemporaneously with this sentencing memorandum, Johnson is a man who is deeply loved and respected by those who know him best. His family, while acknowledging that Johnson has made real mistakes that understandably bring him before this Court, hope that this Court will understand that Johnson is a good person who deserves a second chance. He is described as honorable, responsible, hardworking, and strong. His family notes that he is a good athlete who has always been there for those who need him most, including his son.

One of the hardest realities to accept is that we cannot go back in time to make better decisions. We can, however, look to the future to ensure that we do not make the same mistakes. This is exactly what Johnson is fully committed to doing. He will serve his time, better himself, and emerge prepared to be there for his son and his family and to ensure that he never finds himself before this Court, or any other court, for any reason ever again.

B. Need for Sentence to Promote Just Punishment, Deterrence, Incapacitation, and Rehabilitation – 18 U.S.C. § 3553(a)(2)

To be clear, the parties jointly agree that a sentence of 15 years—which represents a substantial punishment and an appropriate sentence compared to similarly situated defendants and others charged in this case—is the appropriate sentence in this case.

Johnson would benefit from participating in the Bureau of Prison's Residential Drug Abuse Program during his incarceration and requests that this Court include a recommendation that he be considered for RDAP. As the Bureau of Prisons reports, "[r]esearch findings demonstrated that RDAP participants are significantly less likely to recidivate and [positively impacts] the lives of offenders following their release from custody and return to the community." Bureau of Prisons,

5

*Substance Abuse Treatment.*[2]

When confronting a crime such as this, it may be tempting for many in society to demand a draconian punishment. That is understandable. But it has become clear that simply lengthening a prison sentence does not serve society's objectives across the board. Indeed, the United States Department of Justice itself acknowledged that "prison sentences are unlikely to deter future crime" and that "prisons actually may have the opposite effect." "Five Things About Deterrence," U.S. Department of Justice (July 2014). Based on the Department of Justice's research, "Increasing the severity of punishment does little to deter crime." *Id*.

To be clear, no one seeks to minimize the seriousness of the crimes for which Johnson is being sentenced. Rather, it is important for this Court to consider the full picture of Johnson's character and the bases—both legal and factual—that warrant the sentence the parties jointly agree is appropriate.

A sentence of 180 months, under the facts and circumstances of this case, will afford adequate deterrence (specific and general) and protect the public from further crimes. *See* 18 U.S.C. § 3553(a)(2)(B). This is, by no means, an insignificant sentence.

      C.      <u>Sentencing Guidelines, Including Policy Statements, and the Need to Avoid Unwarranted Sentencing Disparities – 18 U.S.C. § 3553(a)(4), (5), and (6)</u>

In this case, a sentence of 180 months will avoid unwarranted sentencing disparities given the facts and circumstances of this case. Indeed, the PSR notes that Johnson is equally culpable with codefendants Andre Smallwood and Christopher Pipes. (Doc. 926 at ¶ 40). Smallwood and Pipes were each recently sentenced by this Court to 120 months' imprisonment. (*See* Doc. 926 at ¶¶ 10-11). As such, a sentence of 180 months in this case would avoid any unnecessarily excessive sentencing disparities. *See Kimbrough v. United States*, 552 U.S. 85, 107 (2007) (emphasizing

---

[2] Information available at: https://www.bop.gov/inmates/custody_and_care/substance_abuse_treatment.jsp.

need for sentencing courts to avoid unwarranted sentencing disparities among similarly situated defendants).

The bottom line is that Johnson will also face extensive collateral consequences as a result of these convictions—regardless of how long he is in prison. *See, e.g., United States v. Nesbeth*, 188 F. Supp. 3d 179, 188 (E.D.N.Y. 2016) (noting that collateral consequences may be considered as bearing on just punishment and accordingly factoring such consequences into a Section 3553(a) analysis). The ramifications of supervised release, and the corresponding limitations on his freedom, are intrinsically punitive. And, in the midst of the ongoing COVID-19 pandemic, the time in custody is that much harder because in-person visits are impossible at certain times and very difficult at others.

As the Honorable Paul Englemayer in the United States District Court for the Southern District of New York recently observed:

> the conditions in federal prisons have been uncommonly hard during the pandemic. At the MCC and the MDC, the local jails, where in-custody defendants awaiting sentence in this district are typically held, such conditions have been particularly onerous and, on several occasions, have resulted in lengthy lockdowns. To prevent the spread of COVID, there have been restrictions on inmate movement, and on visits from family and counsel. There have also been restrictions to aimed at safeguarding health in various FCIs, federal correction institutions, in which defendants are generally designated after sentencing. I have repeatedly taken those harsh conditions into account in imposing sentence.

*See United States v. Teman*, Tr. from Hearing Dec. 1, 2020 (S.D.N.Y. Case No. 19-CR-696-PAE at pp. 44-45). Judge Englemayer continued,

> I have repeatedly said in sentences over the last eight months that time spent in custody during the lockdown conditions necessitated by a pandemic is necessarily harder time than Congress or anyone ever envisioned or intended prison time to be. And so in deciding on the just sentence, I have taken the view the defendants who have endured custody in such circumstances are entitled -- all else equal -- to lower overall sentences than would otherwise be the case. In other words, in calculating the sentence, I have informally given defendants credit for more than one day for each day spent in custody.

7

*Id.* These same considerations apply with full force to Johnson, who has been in custody throughout the pandemic and will remain in custody through its end.

        D.      <u>Need to Provide Restitution – 18 U.S.C. § 3553(a)(7)</u>

The PSR recognizes that Johnson's current financial situation does not indicate an ability to make an immediate monetary payment. However, the defense has reviewed the preliminary order of forfeiture recently entered in this case (Doc. 925) and the defense has no objection to the Court's entry of a final order of forfeiture consistent with the preliminary order. To the extent any further restitution is due, Johnson accepts that it should be included in his sentence.

**V.**      **Conclusion**

Based on the foregoing, Johnson respectfully requests that this Court sentence him to 180 months' imprisonment as agreed to by the parties in the plea agreement pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) as this sentence is "sufficient, but not greater than necessary," and that is what the law requires. 18 U.S.C. § 3553(a).

                Respectfully submitted,

                **Margulis Gelfand, LLC**

                <u>*/s/ Justin K. Gelfand*</u>
                JUSTIN K. GELFAND
                WILLIAM S. MARGULIS
                8000 Maryland Avenue, Suite 420
                St. Louis, MO 63105
                Telephone: (314) 390-0234
                Facsimile: (314) 485-2264
                justin@margulisgelfand.com
                bill@margulisgelfand.com

**Certificate of Service**

    I hereby certify that the foregoing was filed electronically with the Clerk of the Court. I further certify that the foregoing was served via email on counsel for the United States.

    */s/ Justin K. Gelfand*
JUSTIN K. GELFAND
WILLIAM S. MARGULIS
8000 Maryland Avenue, Suite 420
St. Louis, MO 63105
Telephone: (314) 390-0234
Facsimile: (314) 485-2264
justin@margulisgelfand.com
bill@margulisgelfand.com